IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

DOROTHY BOHANON                                                                                          PLAINTIFF

VS.                                                                          CIVIL ACTION NO.: 2:12-cv-167-JMV

HWCC-TUNICA, INC.                                                                                       DEFENDANT

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the court on Defendant's Motion for Summary Judgment [48], seeking dismissal of plaintiff's age and race claims. Because Plaintiff concedes she has no age discrimination claim, does not present direct evidence of race discrimination applicable to the person responsible for making the decision to terminate her employment, and does not present a prima facia case of race discrimination, summary judgment is proper as to all of her claims.

### Facts

Dorothy Bohanon ("Plaintiff"), an African-American female over the age of forty, is a former employee of Hollywood Casino Corporation ("Hollywood Casino"). She began working with Hollywood Casino in July 1994 as a Dealer, and subsequently, as both a Dual Rate Supervisor and a Dealer. She worked in these capacities until her termination in August 2011.

At the inception of her employment, Hollywood Casino provided Plaintiff a copy of the Hollywood Casino Work Rules, and she signed for their receipt. The Rules provide an employee may be subject to discharge for, among other things, discourtesy to any customer.

During her employment, Plaintiff's Performance Appraisal Forms reflected certain areas needing improvement. On July 11, 2003, for example, she received an annual Performance Appraisal Form, noting she needed improvement in, inter alia, "…courte[sy] to external guests, smil[ing], greet[ing], mak[ing] eye contact…." *See* "Performance Appraisal Form" Def. Ex. F

[49-6]. Thereafter, on February 24, 2011, two separate guests complained in writing that Plaintiff was rude while dealing. The Casino counseled Plaintiff regarding those complaints on March 1, 2011, suspended her for three days, and admonished her that any further complaint of rudeness would result in her termination. *See* Pl.'s Dep. [47-1] at 227.

On June 28, 2011, an additional guest logged a written complaint against Plaintiff, indicating she was rude and had an attitude. When the guest asked her if she wanted to be at work, Plaintiff replied either, "No, I don't," or "why you ask that?" *See* Pl.'s Dep. [47-1] at 243. According to Plaintiff, the customer then explained she was "acting like she did not want to be there." *Id.* (A: "I asked her why did she say that." … A: "And she said, Well, you don't look like you don't want to be here."). For her part, Plaintiff contends the customer was rude, had an attitude, and created an argumentative situation. *Id.* at 233-34. In response, the Casino asserts it terminated Plaintiff's employment in keeping with its stated employment policies and previous admonishment to plaintiff.

On August 19, 2011, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging her termination was a result of her race and age discrimination. She specifically asserted she overheard, though had never reported, another employee, Causasian male David Pugh, state on or around February 2011, "It will be alright when we get the blacks out of here." She contends Pugh was the employee responsible for actually obtaining the written customer complaint about her made on June 28, 2011, and she relies on the affidavits of co-employees, Rasheda Hawkins and Michelle Jones, for this latter contention. Specifically, Hawkins' affidavit states, "Roy Banks, Nancy Madison, and Lee Perryman all gave indication to me they had knowledge of the fact Mr. David Pugh solicited a customer complaint from a customer to write up Ms. Bohanon." *See* Aff. of Rasheda Hawkins [51] at 2; *see also* Decl. of

Michelle Jones [50] at 2 ("To the best of my knowledge, information and belief David Pugh solicited a write up from a casino patron against Ms. Dorothy Bohanon in order to create a 'reason' for her termination.").

According to Plaintiff's counsel, Plaintiff's supervisor, Lisa Kistler, made the decision to terminate Plaintiff at the insistence of Pugh – Kistler's subordinate, and counsel relies for that contention on the affidavit of co-employee, Calvin Shefield, who states "Kistler would take the recommendation of Pugh in regard to Ms. Bohanon's performance and these recommendations were given serious consideration by human resources." *See* Pl.'s Resp. to Mot. for Summ. J. [58-2] at 35. The plaintiff herself has testified she does not know what, *if any*, role Pugh had in the decision to terminate her employment, and Kistler, has denied both that she made the decision to terminate the Plaintiff and that she discussed the June 28 infraction with Pugh. Pl.'s Dep. [47-1] at 272. According to the Casino, Andrea Sueing, Vice President of Human Resources for Hollywood Casino, is the employee who made the decision to terminate Plaintiff. *See* Aff. of Andrea Sueing [49-15] at 3. Plaintiff does not contend Pugh had any influence over Sueing.

Upon Plaintiff's termination, the Casino asserts it converted her position into two part-time positions. The first bifurcated position was filled by a thirty-six year old African-American female. The other part-time position remains unfilled. While Plaintiff concedes she does not know who replaced her, if anyone, her counsel asserts (on the basis of a co-employee's affidavit) that though Plaintiff was not replaced, her supervisory duties were reassigned to six individuals, including an African American.

On or about May 31, 2012, Plaintiff received a Dismissal and Notice of Right to Sue from the EEOC and filed suit on August 31, 2012. She asserted two causes of action: race discrimination and age discrimination.

In her complaint, Plaintiff contends she was treated less favorably than similarly situated younger and/or Caucasian employees who were equally rude to customers and she was replaced by an individual who was not a member of her protected class and/or who was younger than she.

### The Law

Plaintiff brings her race-discrimination claims under Title VII and 42 U.S.C. § 1981.[1] To prove race discrimination, Plaintiff can employ either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 n.6 (5th Cir. 2004). In cases where direct evidence of discrimination is found, the plaintiff does not have to make out a prima facie case as outlined under the *McDonnell Douglas* Test. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985). However, where the direct evidence is levied against a co-employee, in order to attribute it to an employer, plaintiff must establish discrimination using the "cat's paw" doctrine. "To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [racial] animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decision maker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004). The "cat's paw" doctrine allows a plaintiff to prove discriminatory intent by showing a nondecision-making supervisor with discriminatory animus "exercised such 'singular influence' over the decision-maker that the decision to terminate was the product of 'blind reliance'" *Staub v. Procter Hosp.*, 131 S.Ct. 1186, 1190 (2011). The Court in *Staub* declined to decide whether the cat's paw doctrine applies to a

---

[1] The Fifth Circuit has held that the elements and the methods of proof employed are the same under Section 1981 as they are under Title VII. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 482 n.2 (5th Cir. 1996).

discriminatory act committed by a subordinate employee that influenced the decision maker. *Id.* at 1194 n.5.

In the absence of direct evidence, Plaintiff's race-discrimination claims are governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1972); *see also Dulin v. Bd. of Comm'rs*, 646 F.3d 232, 244 (5th Cir. 2011); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To demonstrate a *prima facie* case of discrimination, Plaintiff must show (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by or treated less favorably than a similarly situated employee outside the protected class. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). To establish the fourth element, Plaintiff must show the employer either replaced her with a non-African-American or gave preferential treatment to a non-African-American employee under nearly identical circumstances. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). The preferential treatment must illustrate that the misconduct for which the Plaintiff was discharged was nearly identical to the misconduct engaged in by other employees. *Id.* Further, an employee is not considered replaced if his position is eliminated and his duties divided among other employees. *Dulin v. Dover Elevator Co.*, 139 F.3d 898, 1998 WL 127729 at *2 (5th Cir. March 2, 1998).

Finally, it is well established that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether a fact issue has been created, courts must view the evidence in the light most favorable to the non-moving party. *See Haverda v. Hays Cnty., 723 F.3d 586, 591* (5th Cir. 2013). A genuine issue of material fact

exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Rockwell v. Brown,* 664 F.3d 985, 990 (5th Cir.2011). "[ S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) (internal citation omitted). "[W]ithout more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence." *Id.* In such a case, summary judgment is appropriate. *Id.*

## Analysis

### A. Age Discrimination and Dissimilar Treatment of Similarly Situated Employees on the Basis of Race

In her response to the Hollywood Casino's motion for summary judgment, Plaintiff apparently concedes she cannot establish she was treated differently than similarly situated white employees under nearly identical circumstances – nowhere in her multiple responses to Defendant's motion for summary judgment does she take issue with Defendant's assertion no such evidence exists. Nor does she contest the argument she has no age discrimination claim. Accordingly, summary judgment as to these claims is granted.

### B. Direct Evidence of Race Discrimination

As pertains to Plaintiff's claim she has direct evidence her race motivated her termination, see Pl.'s Resp. to Mot. for Summ. J. [58] at 5-7, she relies solely on the assertion she overheard, but did not report, co-worker Pugh state, in February 2011, "[O]nce we get the blacks out of here we will be alright." Pl.'s Resp. to Mot. for Summ. J. [58] at 5-6. She argues Pugh's comment is attributable to her employer under a cat's paw analysis because it was Kistler who made the decision to terminate Plaintiff's employment, and "He [Pugh] made these recommendations to Ms. Kistler who would take his advice." Pl.'s Resp. to Mot. for Summ. J.

[58] at 3. Plaintiff concedes, however, she has no knowledge of whether Pugh was actually involved in the decision to terminate her. *See* Pl.'s Dep. [47-1] at 272 (Q: "Isn't it true that you don't know of any involvement of David Pugh in your suspension, your termination or your warnings, that he was not the decision-maker in any of those; isn't that true?" … A: "I don't know."). She relies only on the fact that Kistler and Queeta Hewitt, an African-American human resources representative, signed the Cast Member Counseling/Attendance Notice (Counseling Notice) to support her contention Kistler made the termination decision. The Casino asserts, however, according to the express terms of the Counseling Notice, Kistler and Hewitt's signatures merely attest they were witnesses to Plaintiff being given written notice of her termination and refusing to acknowledge receipt of it in writing. *See* "Counseling Notice" Def. Ex. M [49-13]. In this regard, the court finds when Plaintiff was earlier suspended for rudeness to customers and Kistler similarly signed an identical Notice form, plaintiff insisted the signature did *not* mean Kistler was responsible for the suspension decision referenced therein. *See* Pl.'s Dep. [47-1] at 223 (Q: "And your supervisor, Lisa, signed it on the same date; is that correct? Appears to have signed it on the same day?" … A: "She wasn't the one suspending me.") In short, Plaintiff offers no reliable, admissible evidence showing, or from which it might reasonably be inferred, Kistler made the decision to terminate her employment. Instead, the uncontroverted evidence shows the decision was made by Andrea Sueing, over whom Pugh exercised no influence. *See* Aff of Andrea Sueing [49-15] at 3 ("I did not discuss the decision to terminate Plaintiff with David Pugh; Mr. Pugh had no input into the decision to terminate Plaintiff in August 2011.").

      Plaintiff's contention that Pugh procured the written customer complaint from which her termination arose is not evidence he exercised any influence over the decision to terminate her

employment as a consequence. Indeed, here it is uncontroverted a casino customer was upset at Plaintiff's attitude on June 28, 2011, and Bohanon essentially conceded the accuracy of the customer's complaint. *See* Pl.'s Dep. [47-1] at 243 (affirming her conduct was such that the customer inquired of her whether she wanted to be there because, according to the customer, she was acting like she did not and describing the circumstances as argumenative). Moreover, plaintiff concedes she had been informed in March 2011 by another employee, Jeff Lang, she would be terminated for any further act of rudeness to a customer. *See* Pl.'s Dep. [47-1] at 236 ("…I knew that Jeff had told me about termination, you know, if I did something like this again.")

### C. Race Discrimination under the *McDonnell Douglas* Analysis

#### 1. No Replacement

In the alternative to her cat's paw/direct evidence argument, Plaintiff asserts she can make a prima facia case for race discrimination under Title VII. The *McDonnell Douglas* analysis requires a plaintiff show she (1) is a member of a protected class, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) was replaced by a member of an unprotected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Hollywood Casino counters, inter alia, Plaintiff was not replaced by a person of an unprotected class because she was not replaced at all. Indeed, Plaintiff herself concedes, alternatively, she was not replaced and/or she doesn't know who replaced her. *See* Pl.'s Dep. [47-1] at 285 (Q: "… [Y]ou allege in paragraph 18 that you were replaced by a Caucasian, but you don't actually know who replaced you or if anyone replaced you; isn't that true?" A: "I don't know."). She suggests through coworkers' affidavits some of her duties, specifically her supervisory ones, were split between six employees, including an African-American employee, while her other responsibilities remain

unfilled.  *See* Aff. of Rasheda Hawkins [58-2] at 32 ("After the termination of Plaintiff, there was not a replacement hired but her supervisory roles were assumed by the other supervisors.  Of the six supervisors who assumed these roles, five of them were Caucasian males.")  Assuming this is accurate, Plaintiff has not shown she was replaced by a person of an unprotected class.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Dulin v. Dover Elevator Co.*, 139 F.3d 898, 1998 WL 127729 at *3 (5th Cir. March 2, 1998).  Accordingly, she has not established a prima facia case, and her argument fails.

### 2.  No Pretext

Lastly, if a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action at issue.  *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).  Even if Plaintiff could establish a prima facia case, she has no proof the legitimate business reason articulated by Hollywood Casino in support of its termination decision is pretextual.  In opposition to this argument, Plaintiff relies on the alleged unreported statement she asserts she overheard Pugh make in February 2011.  This argument is unpersuasive because, as discussed above, the Plaintiff presents no evidence showing Pugh participated in the decision to terminate her employment as a consequence.  On the contrary, as explained earlier, Plaintiff testified she had already been informed in March 2011 she would be terminated for any further act of rudeness to a customer.  *See* Pl.'s Dep. [47-1] at 236  In short, it is evident Bohanon's conduct in June 2011 was that of an unpleasant employee, and she herself describes the situation with the complaining customer as a problem.  *See* Pl.'s Dep. [47-1] at 233-34.

**Conclusion**

For the foregoing reasons, summary judgment in this case is appropriate.  **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**SO ORDERED**, this the 13th day of January, 2014.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**